# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| DAVID HILL<br><br>*Plaintiff*,<br><br>v.<br><br>CONCHO RESOURCES, INC.; and<br>COG OPERATING, LLC,<br><br>*Defendants*. | CIVIL ACTION NO. 7:21-cv-00078<br><br>**JURY DEMAND** |

## PLAINTIFF'S ORIGINAL COMPLAINT

1. Plaintiff David Hill ("Hill" or "Plaintiff") files this, his Original Complaint against Defendants Concho Resources, Inc. ("Concho, Inc.") and COG Operating, Inc. ("COG," collectively with Concho, Inc. "Concho" or "Defendants") and in support thereof, Plaintiff would respectfully show the Court the following:

### I.   PARTIES

2. Plaintiff David Hill is an individual who is a citizen of the State of Texas and resides in Midland, Texas.

3. Defendant Concho Resources, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 600 W. Illinois, Ave., Midland, Texas 79701. Concho, Inc. can be served with process by serving its registered agent Corporation Services Co. at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

4. Defendant COG Operating, LLC, is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 600 W. Illinois, Ave.,

Midland, Texas 79701. COG is a wholly owned subsidiary of Concho, Inc. COG can be served with process by serving its registered agent Corporation Services, Co. at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## II.   JURISDICTION AND VENUE

5.   This is an action for various causes of action arising out of an employment relationship and a wrongful denial of benefits under the laws of the United States. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 as it arises in, arises under, and relates to a case under Title VII and the Employee Retirement Income Security Act of 1974 ("ERISA"). 42 U.S.C. § 2000e-5; 29 U.S.C. § 1132.

6.   The Court has personal jurisdiction over Defendants because each Defendant is a resident of Texas and resides within the Western District of Texas.

7.   Venue is appropriate in the United States District Court for the Western District of Texas under 29 U.S.C. § 1132, as well as 42 U.S.C. § 2000e-5 because Plaintiff was employed by Defendants in this district and because the unlawful acts occurred within this district. Venue is also appropriate in this district under 28 U.S.C. § 1391 because Defendants all reside in Texas and within this district.

## III.   FACTUAL BACKGROUND

8.   Plaintiff David Hill is an African-American gentleman who has worked in the electrical industry since 2007. In 2016, Mr. Hill was hired by RSP Permian, Inc., an oil and gas company, to work as an electrical foreman dealing with the electrical needs of oil and gas exploration. Within a year, Mr. Hill was promoted to electrical supervisor over the electrical and power lines for the Midland and Kermit areas of Texas. A year later based on his strong work performance, Mr. Hill was promoted to electrical superintendent.

9. In July 2018, Concho, Inc. and its subsidiaries purchased RSP Permian and began running RSP Permian's operations. As part of this merger, Mr. Hill was reassigned to be an electrical supervisor for Concho. Mr. Hill's strong work performance did not go unnoticed because in May 2019, Mr. Hill was promoted to be an electrical superintendent for Concho. As part of this job, Mr. Hill was in charge of all electrical work in the Delaware Basin and supervised contractors from four (4) different companies. Mr. Hill was the only African-American electrical superintendent for Concho.

10. At the end of 2019 throughout the first few months of 2020, Mr. Hill noticed several discrepancies and inappropriate activities by one of Concho's contractors, NH Communications and Electrical ("NH"). Some of these included NH's employees forging Mr. Hill's signature on tickets and invoices without Mr. Hill's knowledge or permission. Mr. Hill also noticed that several vendors were complaining about NH's failure to pay them despite Concho already paying NH for the work.

11. Upon discovering these issues, Mr. Hill reported this behavior to his supervisor. To prevent future problems, Mr. Hill also tried to get NH removed from the vendor list for Concho.

12. Throughout his time at both RSP and Concho, Mr. Hill never had any performance issues and was actually promoted three different times. Concho never informed Mr. Hill of any allegations made against him, and never questioned him on any areas of concern.

13. In fact, on May 6, 2020, Concho offered to select employees a separation/severance program (the "Severance Plan"). *See* **Exhibit A** (the Severance Plan letter offered to the employees). As part of this Severance Plan, employees that were fifty-five (55) years of age or older could elect to separate from Concho in exchange for a sizeable severance package. **Ex. A.** If the employee elected to participate in the Severance Plan, then they would be automatically set up

with a separation date of June 5, 2020, or later depending on Concho's decision. **Ex. A.** The only requirements on the part of the employees was that the employee had to remain employed through the separation date and had to sign a release. **Ex. A.** This Severance Plan was established and maintained by Concho through the use of Concho's general assets and administered through Concho.

14. Upon receiving the offer to participate in the Severance Plan, Mr. Hill immediately elected to receive the benefits of that plan. On that same day, Concho sent Mr. Hill a letter confirming that Mr. Hill would receive the Severance Plan and that his last day of employment would be on June 5, 2020. **Exhibit B** (Confirmation Letter sent May 6, 2020). This letter also confirmed that Mr. Hill would receive a lump sum payment of $206,852.61 plus payment for his unused paid time off, and his stock would be vested. **Ex. B.**[1]

15. A day later on May 7, 2020, Concho informed Mr. Hill that he was being terminated for vendor misconduct. Concho asserted that a contractor (NH presumably) had accused Mr. Hill of taking bribes which were used to give Mr. Hill free trips to Las Vegas and paid off Mr. Hill's vehicle. These allegations and his termination came as a complete shock to Mr. Hill.

16. These allegations were also false and were created to get back at Mr. Hill for reporting the contractors. Mr. Hill denied these allegations and told Concho that he had documentation showing that he never took any bribes and in fact had paid for the trip and the car himself. Concho, however, refused to look at his documentation or provide any other investigation or review to allow Mr. Hill to defend himself. Ultimately, Concho was only creating this excuse as a pretext to terminating Mr. Hill due to his race and to avoid having to pay him any of the

---

[1] Concho ultimately merged with ConocoPhillips early 2021 and Concho's common stock could be exchanged for 1.46 shares of ConocoPhillips stock. Thus, Mr. Hill's vested stock that he would have received from the Severance Plan would ultimately have resulted in more stock in ConocoPhillips.

Severance Plan. The fact that he was terminated a day after he elected to receive the Severance Plan without any warning or indication that accusations were made against him or that he was being investigated make clear that he was terminated to avoid paying these benefits.

17. Due to this wrongful discharge at this later stage of his life, Mr. Hill has been unable to gain meaningful employment. Since his termination, Mr. Hill was able to get one part time job, but was ultimately laid off from that position due to the Covid-19 pandemic. Mr. Hill has also suffered mental anguish.

### IV. COUNT I: ERISA INTERFERENCE WITH ERISA BENEFITS

18. Plaintiff hereby incorporates by reference the preceding paragraphs above as if fully set forth in this cause of action.

19. The Severance Plan is a qualified plan covered by ERISA. The Plan set out ascertainable benefits that were clearly defined. For example, each participant knew based on the Plan's language that they would be receiving a year's salary, six month's bonus, a lump sum worth eighteen months of COBRA premiums, and the vesting of unvested stock in the company. The Severance Plan also set forth a readily identifiable procedure for receiving the benefits.

20. The Severance Plan was funded through the general assets of Concho. The class of beneficiaries was clearly defined within the Severance Plan itself. Mr. Hill was a part of that class of beneficiaries because he elected to participate in the plan and was over 55 years of age. Concho even acknowledged that Mr. Hill elected to participate and was part of the class of beneficiaries.

21. Because Mr. Hill elected to participate in the Severance Plan and acted in accordance with the Plan, Mr. Hill was entitled to the benefits under the Plan per ERISA.

22. Despite Mr. Hill's entitlement to the benefits, Concho wrongfully interfered with his rights under the Plan by terminating his employment to prevent him from receiving those

benefits. 29 U.S.C. § 1140. Concho terminated Mr. Hill one day after participating in the plan and less than a month prior to his employment ending voluntarily and being entitled to the benefits under the Plan.

23. Concho stated that they were terminating Mr. Hill's employment due to improper actions with a contractor; yet, Concho's reasons are clearly pretextual when they refused to allow Mr. Hill to provide conclusive proof to clear his name. Instead, Concho was merely wanting any excuse to prevent paying Mr. Hill his entitled benefits under the Severance Plan. Mr. Hill's performance for the company including multiple promotions precludes any reasons for terminating his employment other than to interfere with his benefits under the Severance Plan.

24. Concho's interference with Mr. Hill's rights caused him to lose the benefits he was owed under the Severance Plan. 29 U.S.C. § 1132. This interference caused Mr. Hill harm exceeding $250,000.

25. Concho's interference will also cause Mr. Hill significant attorney's fees and costs that he is entitled to recover under ERISA. 29 U.S.C. § 1132.

## V.     COUNT II: ERISA BREACH OF FIDUCIARY DUTIES

26. Plaintiff hereby incorporates by reference the preceding paragraphs above as if fully set forth herein.

27. As stated above, the Severance Plan is a qualified plan covered by ERISA. The Plan set out ascertainable benefits that were clearly defined. For example, each participant knew based on the Plan's language that they would be receiving a year's salary, six month's bonus, a lump sum worth eighteen months of COBRA premiums, and the vesting of unvested stock in the company. The Severance Plan also set forth a readily identifiable procedure for receiving the benefits.

28. The Severance Plan was funded through the general assets of Concho. The class of beneficiaries was clearly defined within the Severance Plan itself. Mr. Hill was a part of that class of beneficiaries because he elected to participate in the plan and was over 55 years of age. Concho even acknowledged that Mr. Hill elected to participate and was part of the class of beneficiaries.

29. Defendants are fiduciaries under ERISA in relation to the Severance Plan because they were a custodian of the assets that funded the Plan; they were the Plan sponsors and employers of Plaintiff and the participants and beneficiaries of the Plan; and they exercised complete discretion over the administration of the Plan and over the management of the assets that funded the Plan.

30. Plaintiff was a participant and beneficiary under the Severance Plan and has standing to sue under ERISA. 29 U.S.C. § 1132.

31. Concho's intentional termination of Plaintiff to avoid paying him the benefits he was entitled to under the Severance Plan constituted a breach of their fiduciary duties. Further, Concho's failure to properly investigate the pretextual reasons for terminating Mr. Hill and failure to allow Mr. Hill to put forth proof conclusive evidence negating the allegations against him also constitute breaches of Concho's ERISA fiduciary duties.

32. Concho failed to act solely for the benefit of the Severance Plan participants and to act with the "care, skill, prudence, and diligence" that ERISA requires. 29 U.S.C. § 1104.

33. Specifically, Concho failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims. *Id.*

34. ERISA's prudence and diligence requirements focuses on process over results and Concho failed to act prudently by failing to conduct a thorough investigation and allowing Mr.

Hill to put forth proof showing their pretextual reasons were false. Concho's failure ultimately interfered and violated the purpose of the Severance Plan.

35. Concho's breaches caused Mr. Hill harm exceeding $250,000, and they are liable for the harm caused along with equitable and other remedies including disgorgement of any profits earned from the money they retained in violation of their duties. 29 U.S.C. § 1132.

### VI. COUNT III: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII AND TEXAS LABOR CODE CHAPTER 21

36. Plaintiff hereby incorporates by reference the preceding paragraphs above as if fully set forth herein.

37. Mr. Hill timely filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this Complaint within 90 days after receiving a notice of the right to sue letter from the EEOC. A copy of the notice of right to sue is attached as **Exhibit C.**

38. Mr. Hill was an employee of Defendants within the meaning of Title VII and the Texas Labor Code and belongs to a protected class under the statute because he is African American.

39. Mr. Hill was the electric superintendent for Defendants at the time he was terminated. Mr. Hill never received any poor performance reviews from Defendants at anytime.

40. Defendants are an employer under the meaning of Title VII and Texas Labor Code because they were engaged in an industry affecting commerce, and had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. According to a simple internet search, Concho Resources had at least 1,400 employees.

41. Defendants intentionally discriminated against Mr. Hill based on his race in violation of Title VII and Texas Labor Code by terminating Mr. Hill despite Mr. Hill being the

only African American electrical superintendent in the company. Many similar employees who were not African American retained their jobs or were allowed to attain their benefits under the Severance Plan.

42. Defendants' disparate treatment is more pronounced since Defendants' proffered reason for terminating Mr. Hill was absolutely false and Defendants refused to investigate or listen to the controverting evidence.

43. Defendants are directly liable for the actions of their employees who terminated Mr. Hill for discriminatory reasons.

44. Defendants' actions caused Mr. Hill significant damages including the lost benefits he would have received under the Severance Plan and back pay. Further by terminating Mr. Hill, he is entitled to his back pay and front pay. Mr. Hill has been diligently seeking employment but has been unable to find or attain a comparable job.

45. Mr. Hill has incurred expenses in seeking other employment, has suffered losses to his retirement, and has suffered significant mental and emotional distress.

46. Mr. Hill is also entitled to his attorney fees and costs.

## VII.    COUNT IV: BREACH OF CONTRACT

47. Plaintiff hereby incorporates by reference the preceding paragraphs above as if fully set forth herein.

48. Plaintiff asserts this cause of action for breach of contract in addition and/or alternatively to his ERISA claim.

49. Mr. Hill entered into an enforceable contract with Concho when Mr. Hill opted in to receive the benefits under the Severance Plan. Plaintiff attaches a copy of this Plan along with the acknowledgement from Concho as **Exhibits A and B.**

50. This Severance Plan provided that Mr. Hill when he agreed to the Plan would voluntarily quit his employment with Concho at a certain date in the future. In return, Concho would pay Mr. Hill a year's salary, six months of his bonus, eighteen months of COBRA premium, and they would vest his stocks.

51. The Severance Plan provided that Mr. Hill would receive the benefits if he remained employed through the termination date. Mr. Hill fully intended to remain employed through that date especially since he never had any performance issues and was very excited to be able to get a lump sum to hopefully be able to take some time off at his age.

52. However, in complete bad faith, Concho knew that Mr. Hill would fulfill his obligations under the Plan so to avoid paying him his benefits under the Plan, Concho terminated Mr. Hill for cause. Concho explained that Mr. Hill had inappropriate behavior with a vendor, specifically that he had allowed a vendor to pay for his car and for a vacation. Mr. Hill was completely blindsided by this allegation especially since it was false because Mr. Hill had personally paid off his car and for his vacation and had all the receipts to prove it.

53. Concho did not listen to Mr. Hill or fully investigate the claims because Concho did not even attempt to interview Mr. Hill. Instead, Concho used these false allegations as a bad faith attempt to circumvent the contract.

54. Concho's breach and bad faith actions caused injury to Mr. Hill which resulted in the loss of the benefits Mr. Hill was expected to receive under the Severance Plan.

### VIII.   CONDITIONS PRECEDENT

55.     All conditions precedent to Mr. Hill's claims for relief have been performed or have occurred.

### IX.   JURY DEMAND

56.     Plaintiff asserts his rights under the United States Constitution and Federal Rule of Civil Procedure 38 to have all issues tried before a jury.

### X.   CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Hill prays that Defendants be cited to appear herein as provided by law and that upon hearing:

1. Mr. Hill recover from Defendants monetary damages, including without limitation disgorgement of profits and recovery of all benefits under the Severance Plan;

2. Pre- and post-judgment interest be assessed on all sums awarded herein at the highest lawful rate;

3. All costs of court be assessed against Defendants;

4. Mr. Hill recover his attorney's fees'

5. Mr. Hill be awarded exemplary damages; and

6. Mr. Hill be awarded such other and further relief to which he may show himself justly entitled, either at law or in equity.

Submitted: April 29, 2021

        Respectfully submitted,

        **MCCATHERN, PLLC**

        By: */s/ D. Aaron Dekle*
            Levi G. McCathern II
            State Bar No. 00787990
            lmccathern@mccathernlaw.com
            D. Aaron Dekle
            State Bar No. 24100961
            adekle@mccathernlaw.com
            Regency Plaza
            3710 Rawlins, Suite 1600
            Dallas, Texas 75219
            Telephone: (214) 741-2662
            Facsimile: (214) 741-4717

        **ATTORNEYS FOR PLAINTIFF**