IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| DAVID HILL,<br>    *Plaintiff,*<br><br>v.<br><br>CONCHO RESOURCES, INC.,<br>COG OPERATING, LLC,<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | MO:21-CV-00078-DC |

## ORDER

It appears Plaintiff's claims opened the Ark of the Covenant because with each passing moment another claim melts away. After starting with breach of contract, ERISA, and racial discrimination claims, Plaintiff now only asserts his breach of contract claim.

Plaintiff David Hill became an employee of COG Operating, LLC, a subsidiary of Concho Resources, Inc. (together, "Defendants"), through a merger in 2018. Plaintiff worked as an Electrical Superintendent until the global COVID-19 pandemic altered the world economy. Facing a changing business environment, Defendants announced a Voluntary Separation Program ("VSP") in Spring 2020, under which employees meeting certain requirements could voluntarily resign and receive specified benefits. Plaintiff met those requirements. So on May 6, after Plaintiff elected to participate in the VSP, Defendants emailed Plaintiff a separation and release agreement ("Release Agreement").

The Release Agreement states that Plaintiff will resign his position effective June 5, 2020 ("Separation Date").[1] Plaintiff would receive specified separation benefits in exchange for his voluntary resignation "provided [Plaintiff] remain employed through the Separation

---

[1] Doc. 40-1, Ex. B.

Date and timely sign, return, and comply with the terms of this Release Agreement." Plaintiff had 45 days to sign and return the Release Agreement but could not do so "before [his] separation date on June 5, 2020."[2]

Yet around the same time, Defendants were investigating third-party allegations that Plaintiff was getting kickbacks from Defendants' vendors by ensuring those vendors won contracts with Defendants. After a thorough investigation, Defendants terminated Plaintiff's employment on May 7—the day after Plaintiff elected to participate in the VSP—and before he had signed and returned the Release Agreement.

Plaintiff sued in April 2021, alleging two ERISA claims, a racial discrimination claim, and a breach of contract claim. The Court has since dismissed his two ERISA claims. And in August 2022, after the parties cross-moved for summary judgment, Plaintiff tried to withdraw his racial discrimination claim in his response to Defendants' Motion for Summary Judgment, claiming the issue was now moot. But as addressed below, Plaintiff can't dismiss that claim without this Court's permission. Thus, the Court addresses both the racial discrimination and the breach of contract claim below.

## LEGAL STANDARD

Summary judgment's purpose is to isolate and dispose of factually unsupported claims or defenses.[3] Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the

---

[2] *Id.* ¶ 4.
[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

nonmoving party."[4] Substantive law identifies which facts are material.[5] The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment."[6]

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that establish the absence of a genuine issue of material fact.[7] If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."[8] While the nonmovant bears the burden of proof, the movant may discharge the burden by showing that no evidence supports the nonmovant's case.[9]

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."[10] A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment.[11] Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a

---

[4] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).
[5] *Id.*
[6] *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).
[7] Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323.
[8] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).
[9] *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).
[10] *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).
[11] *Anderson*, 477 U.S. at 257.

request for summary judgment.[12] The Court must consider all the evidence but "refrain from making any credibility determinations or weighing the evidence."[13] And in contract interpretation cases arising under state law, summary judgment is appropriate if the contract is unambiguous and can be given a certain or definite legal meaning or interpretation.[14]

## DISCUSSION

The contested issues here revolve around the Release Agreement. Plaintiff argues that by electing to participate in the VSP, the Release Agreement formed a bilateral contract for the separation benefits, which Defendants breached. Plaintiff argues alternatively that the Release Agreement changed his at-will employment, also making his termination a breach of contract. Neither party argues the Release Agreement was ambiguous. Both of Plaintiff's arguments, however, require a contract to be formed.

But before the breach of contract issues, the Court will address the uncontested issue—Plaintiff's racial discrimination claim.

### I.     Racial Discrimination claims.

Plaintiff sought to withdraw his racial discrimination claim in his response to Defendants' Motion for Summary Judgment. But Plaintiff may not unilaterally withdraw his claims to avoid a negative judgment. Indeed, under Rule 41(a)(2) of the Federal Rules of Civil Procedure, a plaintiff may not voluntarily dismiss a claim after a summary judgment motion has been filed without first receiving the Court's consent. Plaintiff neither asked for nor received consent.

---

[12] *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)).
[13] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).
[14] *D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir.1992).

Defendants met their burden—no genuine dispute of material fact exists. There is nothing more to review. Thus, because Plaintiff presented no evidence to counter Defendants' motion on the racial discrimination claims, the Court grants Defendants' summary judgment motion on this claim.[15].

## II. An enforceable contract is a prerequisite to a breach of contract claim.

To succeed on a breach of contract claim under Texas law, Plaintiff must prove there was a (1) valid contract (2) where Plaintiff performed, (3) but Defendants breached, (4) and that breach damaged Plaintiff.[16] Plaintiff and Defendants' arguments focus mainly on whether the other breached the Release Agreement in some way. But one cannot breach a contract without first forming one. Thus, the threshold issue is whether the parties formed an enforceable contract.

### A. Was the Release Agreement an enforceable contract?

Forming a valid contract under Texas law requires: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.[17] Here, no one disputes that Defendants made an offer. But an offeror can dictate how the offeree must accept the offer: either through a return promise or through performance.[18]

A contract then, can be either bilateral or unilateral. Bilateral contracts are those "in which there are mutual promises between two parties to the contract, each party being both

---

[15] *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (The Court also notes that Plaintiff's attempt to withdraw his racial discrimination claim impacts his breach of contract claim).
[16] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (applying Texas law).
[17] *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 521 (Tex. App—Eastland [11th Dist.] 2015, pet. denied).
[18] *See, e.g., Joiner v. Elrod*, 716 S.W.2d 606 (Tex. App.—Corpus Christi 1986, no pet.).

a promisor and a promisee."[19] In contrast, a unilateral contract is "created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs."[20]

Defendants detailed in the Release Agreement how Plaintiff could the accept Defendants' offer. Plaintiff only could accept by doing three things: (1) timely elect to participate in the VSP, (2) sign and return the Release Agreement to Defendants on the Separation Date, and (3) still be employed by Defendants on the Separation Date. The release agreement required Plaintiff's performance, not a return promise. Therefore, the Release Agreement was a unilateral contract.

So to accept Defendants' offer, Plaintiff had to perform. And his performance had to "strictly comply" with the offer. Indeed, according to the Texas Supreme Court, when "an offer prescribes the time and manner of acceptance, its terms in this respect must be complied with to create a contract."[21] Or put another way, an offer can be "conditioned" on a specific manner of acceptance.[22]

 Plaintiff elected to participate in the VSP. But he never signed and returned the contract. Nor was he still employed on the Separation Date.[23] Thus, without Plaintiff's performance, there was no acceptance. And without acceptance, no contract was formed.

Plaintiff argues that it's unreasonable to interpret the Release Agreement as a unilateral contract because it would make the contract illusory.[24] That's incorrect. The Texas Su-

---

[19] *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009).
[20] *Id.*
[21] *Town of Lindsay v. Cooke Cnty. Elec. Co-op. Ass'n*, 502 S.W.2d 117, 118 (Tex. 1973).
[22] *Tecore, Inc. v. AirWalk Commc'ns, Inc.*, 418 S.W.3d 374, 385 (Tex. App.—Dallas [5th Dist.] 2013, pet. denied) (the parties' arguments in this case about the condition precedent are intertwined with the issue of acceptance and can handled together).
[23] Doc. 40-1, Ex. B.

6

preme Court has already ruled in a situation like this case that "[e]ven if the promise is illusory, a unilateral contract can be formed."[25] In *Vanegas v. American Energy Services*, a corporate employer promised certain employees that if the company was sold, they would receive five percent of the sale proceeds if still employed with the company when that event occurred. When the company was sold four years later, the company claimed the promise was illusory and thus not enforceable. The supreme court disagreed.

Like the *Vanegas* court states, "[e]ven if the promise is illusory, a unilateral contract can be formed."[26] Almost all unilateral contracts are illusory at the beginning. But such a contract becomes enforceable upon performance—there, the employees who remained with the company until it was sold. So once the company was sold, a valid contract existed between the company and employees and could be enforced against the company.

The Release Agreement gave the "time and manner of acceptance." Plaintiff did not perform as the Release Agreement required and did not accept the offer. And without Plaintiff's acceptance, be it a contract for benefits or an employment agreement, no contract was formed.

### B. Did firing Plaintiff keep him from performing?

The question now becomes, like Plaintiff argues, whether Defendants' actions unlawfully prevented him from performing in the way "conditioned" by the Release Agreement. Under Texas law, if "one party to the contract, *by wrongful means*, prevents the other party from performing, as by making it impossible for him or her to perform, such action consti-

---

[24] Doc. 40.
[25] *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 301 (Tex. 2009).
[26] *Id.*

tutes a breach of the agreement."[27] It's uncontested that by terminating Plaintiff's employment, Defendants prevented Plaintiff from performing. The critical word then, is "wrongful." And Plaintiff's claim that he was wrongfully terminated is the racial discrimination claim.

But Plaintiff no longer contests his termination was racially discriminatory; Plaintiff threw that claim out of the plane without a parachute. [28] And unfortunately for Plaintiff, the claim now freefalling was his only remaining argument that Defendants acted "wrongfully."

Plaintiff instead embraces a public policy argument, claiming that if Defendant's actions are allowed, "employers could enter into severance agreements with their employees and then terminate those agreements prior to paying out the benefits and avoid all liability."[29] Well, sure. If that were the case, a plaintiff would likely allege facts that the employer's actions were wrongful—maybe that the employer was racially discriminatory—thus creating a fact issue that would survive summary judgment.

In any event, whether Plaintiff did or didn't do what was alleged is not the Court's concern here. What is its concern, however, is that there is no genuine issue of material fact about whether Defendants' actions were "wrongful." So without any evidence to the contrary, Plaintiff can't show that Defendants wrongfully prevented him from performing the acts needed to form an enforceable contract.

---

[27] *TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749 (Tex. App.—Dallas [5th Dist.] 2018, pet. denied) (emphasis added); *see also*, *Bans Properties, L.L.C. v. Hous. Auth. of City of Odessa*, 327 S.W.3d 310, 313 (Tex. App—Eastland [11th Dist.] 2010, no pet.) (performance is excused when one contracting party prevents another from performing).
[28] Doc. 44 at 1, n.1.
[29] Doc. 46 at 4.

## CONCLUSION

Plaintiff voluntarily tried to throw out his racial discrimination claim in a footnote, but in the process stymied his breach of contract claim. Without evidence showing Defendants' wrongfully prevented Plaintiff from performing, the issue returns to whether there was an enforceable contract. There was not. Accordingly, both Plaintiff's claims—racial discrimination and breach of contract—do not survive Defendants' Motion for Summary Judgment.

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment be **GRANTED**. (Doc. 39).

It is also **ORDERED** that Plaintiff's Motion for Summary Judgment be **DENIED**. (Doc. 40).

It is so **ORDERED**.

SIGNED this 6th day of October, 2022.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE